UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY CAPEHART,

      Petitioner,

                              Case No. 8:23-cv-1443-MSS-AEP

v.

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

**O R D E R**

      Capehart petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for murder and burglary. (Doc. 1) The Court preliminarily reviews the petition for sufficiency. Rule 4, Rules Governing Section 2254 Cases.

      Judge Charlene Honeywell denied Capehart's earlier Section 2254 petition challenging the same state court judgment. *Capehart v. Sec'y, Fla. Dep't Corrs.*, No. 8:20-cv-1480-CEH-SPF (M.D. Fla.), ECF No. 5. Because Capehart does not present a claim that ripened only after the adjudication of his earlier petition and because Judge Honeywell adjudicated the earlier petition on the merits, this Court lacks jurisdiction to consider the construed second or successive Section 2254 petition until Capehart obtains permission from the court of appeals. 28 U.S.C. § 2244(b)(3)(A). *Stewart v. United States*, 646 F.3d 856, 863 (11th Cir. 2011) ("[C]laims based on a *factual* predicate not previously discoverable are successive, but [i]f . . . the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.") (italics in original) (citation and internal quotations omitted).

In Ground One, Capehart asserts that he is actually innocent of the crimes because the post-conviction court stated in an order denying his motion for DNA testing that "'scant' to no evidence" supported his convictions. (Doc. 1 at 5) In Ground Two, he asserts that he is unlawfully incarcerated because of his actual innocence. (Doc. 1 at 7) In Ground Three, he asserts that he is entitled to conditional release under Section 947.149, Florida Statutes, because he suffers from a terminal illness and will live for only six more months. (Doc. 1 at 8) In Ground Four, he asserts that his incarceration while he is actually innocent and terminally ill violates his federal right to due process. (Doc. 1 at 10)

Even if Capehart's claims are based on a factual predicate not previously discoverable, his claims fail. "[T]he Supreme Court has held that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Also, a petitioner must "support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Judicially noticed records from Capehart's earlier federal habeas action show that the post-conviction court denied his motion for DNA evidence as follows (*Capehart*, No. 8:20-cv-1480-CEH-SPF (M.D. Fla.), ECF No. 1-1 at 10–13 (state record citations omitted)):

> In the instant motion, the Defendant seeks deoxyribonucleic acid (DNA) testing and evaluation of evidence consisting of the "palm print on the outside of the window screen" which he asserts was not tested and is inconclusive. Defendant also seeks testing of "all written, spoken or implied testimony or statements." Defendant claims that he is innocent of the charges

and that re-testing and re-evaluation of the evidence will guarantee his exoneration.

. . .

The Defendant's motion is facially insufficient because the Defendant does not allege the present location or last known location of the evidence, or state that subsequent scientific developments in DNA testing techniques likely would produce a definitive result establishing that the Defendant is not the person who committed the murder. *See* Fla. R. Crim. P. 3.853(b)(2). Nor does he specifically explain how re-testing of the item requested will give rise to a reasonable probability of acquittal or a lesser sentence. The court notes that Defendant lists only one specific item for which he seeks re-testing, the palm print on the window screen. The court finds that the request to re-test and re-evaluate "all written, spoken or implied statements" cannot be made under Rule 3.853, which applies only to DNA testing of physical evidence.

However, allowing Defendant to amend to attempt to file a facially sufficient rule 3.853 motion would be futile and may also be barred by collateral estoppel. In 2003, Defendant filed a motion for post-conviction DNA testing of the evidence in the case. In that motion, the Defendant admitted, under oath, that the partial palm print from the victim's window screen matched the Defendant's palm print but sought testing or re-testing of other evidence. As Defendant's pending claim directly contradicts his prior claim made under oath, the Defendant should not be able, in good faith, to attempt to amend to file a facially sufficient claim.

Moreover, the State previously agreed that any existing evidence would be tested for DNA; the Court directed the State to file a list of evidence to be examined. The list of items to be examined for DNA, filed December 22, 2005, includes a "window screen." The motion for post-conviction DNA testing of evidence was thereafter denied on August 14, 2006, as testing of the evidence revealed no DNA on any of the "items seized from the crime scene." The Court finds that further attempts to test or re-test the evidence in this case would be futile as no DNA was found on any of the evidence during the previous DNA testing.

The post-conviction court's order did not describe the evidence proving Capehart's guilt as "scant." The state supreme court in *Capehart v. State*, 583 So. 2d 1009, 1011–12 (Fla. 1991)[1], summarized the competent, substantial evidence that proved Capehart's guilt:

> According to the evidence, on the morning of February 4, 1988, Deputy Sheriff Jeffrey Clark was conducting a neighborhood check following the report of a break-in at Rebecca Henry's apartment in Dade City. Henry had been awakened around five in the morning by a black man, approximately five-feet nine-inches tall and one-hundred-sixty pounds, mashing a cushion down tightly on her face and demanding money. When she passed out, he left.
>
> In connection with the investigation, Clark went next door to the residence of sixty-two-year-old Marlene Reeves and found the house ransacked and Reeves dead in her bed. Her face was covered with a pillow, and her underwear was pulled halfway down the legs; she was also wearing a nightgown and a brassiere that had been pushed up over her breasts.
>
> A partial palm print was lifted from Reeves's window screen and was later matched to Capehart's right palm print. An autopsy revealed that Reeves had suffered injuries to her sexual organs, caused by a sexual assault that occurred just prior to her death. The cause of death was asphyxiation due to smothering. Under constant pressure, Reeves would have been unconscious after one or two minutes, and death occurred after five to ten minutes. Medical evidence indicated that Reeves died between 11:41 P.M. and 4:41 A.M.
>
> Reeves's neighbor, Robert Caruthers, testified that he had seen a person wearing an orangish-yellow trench coat and a light brown fedora walk by his windows in the direction of Reeves's apartment between 4:40 A.M. and 6:00 A.M. Another witness, Diane Harrison, testified that around daybreak on the day of the murder, she had seen Capehart exiting the area where Reeves lived. He was wearing a long black trench coat and a hat.

---

[1] A jury found Capehart guilty of the crimes, and the trial court sentenced him to death. *Capehart*, 583 So. 2d at 1010–11. On post-conviction, the parties stipulated that Capehart was entitled to a new trial on the penalty phase, and the trial court re-sentenced him to life with parole after twenty-five years. *Capehart*, No. 8:20-cv-1480-CEH-SPF (M.D. Fla.), ECF No. 1-1 at 10.

An acquaintance of Capehart's, Carol McPhail, testified that she saw Capehart a few days after the murder and in response to asking why he did "that to that woman," Capehart replied, "Well, they ain't going to catch me." Capehart's longtime friend, Walter Harrison, testified that he was with Capehart on the day after Marlene Reeves's body was found and that they discussed the murder. Harrison had heard that the police were looking for a man with a black trench coat, and he had earlier loaned Capehart his black trench coat. Harrison asked Capehart if he had committed the murder, and Capehart "said he did it but he didn't mean to do it." Capehart had explained that he broke into the house through a window to get money "without hurting the lady, but she woke up." Capehart said he tried to knock her out with a pillow over her face, but he "accidentally killed her." Harrison then asked Capehart about it again, and this time Capehart denied committing the murder, claiming that he had been kidding Harrison.

The arresting officer, David McKinnon, testified that upon arrest Capehart told him that he was with some "dudes" who were "going to rob this old lady." Capehart claimed he was on the porch, and when the others did not come out for a while, he went inside and "saw the one dude sitting on top of the lady, strangling her." Capehart also said the police caught him because he must have left his fingerprints on the bedroom door.

Later, Capehart was transported to the Pasco County jail by another officer, Tom Muck. Muck testified that when he saw Capehart in the jail's yard several months later, Capehart called him over and told him: "You know, I just wanted that girl's pussy."

. . .

Capehart initially contends that there was insufficient circumstantial evidence to establish that he was the person who killed Marlene Reeves. We find that the jury's verdict is supported by substantial, competent evidence of Capehart's guilt. Several witnesses placed him in the murder scene at the time of the murder. Capehart's palm print was wrapped around the window screen to Reeves's apartment in such a manner as to indicate that he had not merely touched the outside of the screen but had cupped his hand around the frame. Finally, in addition to the direct and incriminating statements to Carol McPhail, Tom Muck, and Officer McKinnon, Capehart confessed to Walter Harrison. We find the evidence sufficient for the jury to

have reasonably rejected the defendant's hypothesis that a third person committed the offenses. *See, e.g.*, *State v. Law*, 559 So. 2d 187 (Fla. 1989).

Because a freestanding actual innocence claim is not cognizable on federal habeas and Capehart fails to demonstrate actual innocence with new reliable evidence, the actual innocence claims in Ground One, Ground Two, and Ground Four are meritless. *Schlup*, 513 U.S. at 324; *Brownlee*, 306 F.3d at 1065 (citing *Herrera*, 506 U.S. at 400).

Also, in Ground Three and Ground Four, Capehart requests conditional release based on state law because he contends that he suffers from a terminal illness. *See* § 947.149(1)(b), Fla. Stat. (authorizing "consideration for release under the conditional medical release program when the inmate, because of an existing medical or physical condition, is determined by the department to be . . . '[t]erminally ill [ ]'"). A federal court may grant a petitioner relief on federal habeas "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, the request for conditional release in Ground Three and Ground Four based on a state statute is not cognizable on federal habeas. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citation omitted).

Accordingly, the Court **DISMISSES** Capehart's second or successive Section 2254 petition (Doc. 1) for lack of jurisdiction and for failure to state a claim. Because the Court lacks jurisdiction to consider the petition, the Court cannot issue a certificate of appealability. *Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007). To the extent that the Court has jurisdiction to review the claims, the Court **DENIES** a certificate of appealability and leave

to appeal *in forma pauperis*. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The Clerk is **DIRECTED** to **CLOSE** this case.

       **DONE AND ORDERED** in Tampa, Florida on July 10, 2023.

                              MARY S. SCRIVEN
                              UNITED STATES DISTRICT JUDGE